KAREN A. OVERSTREET
Chief Bankruptcy Judge
United States Courthouse
700 Stewart St., Suite 6310
Seattle, WA 98101
206-370-5330

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re<br><br>ROBERT JACOB SCOTT and<br>SARAH JANE SCOTT,<br><br>        Debtors.<br>_____<br><br>ROBERT JACOB SCOTT and<br>SARAH JANE SCOTT,<br><br>        Plaintiffs.<br><br>V.<br><br>U.S. DEPARTMENT OF EDUCATION;<br>EDUCAP, INC., THE EDUCATION<br>RESOURCES INSTITUTE (TERI),<br>et. al,<br><br>        Defendants.<br>_____ | Chapter 7<br><br><br><br><br>Bankruptcy No. 07-14317<br><br><br><br>Adversary No. 07-01367<br><br><br><br><br><br><br>**MEMORANDUM DECISION** |

    This matter came before the Court for trial on August 25, 2009. Plaintiffs, Robert and Sarah Scott, seek to discharge their student loans owed to defendants the U.S. Department of Education ("USDOE"), EDUCAP, Inc. ("Educap"), and The Education Resources Institute ("TERI"). For the following reasons, the Court finds that Plaintiffs have met their burden of proving that they are

MEMORANDUM DECISION - 1

entitled to discharge of the loans pursuant to Bankruptcy Code § 523(a)(8).[1]

**I. FACTS**

Robert and Sarah Scott are 33 and 30 years old, respectively. They are a married couple with two sons, ages five and two. Plaintiffs filed a petition for relief under Chapter 7 on September 13, 2007.

A. <u>The Student Loans</u>. Plaintiffs took out various student loans from 1998 to 2005 to pursue study at Bellevue Community College, Central Washington University, and the University of Idaho. [Ex. P-1 through P-25]. Sarah Scott received an Associates of Arts degree from Bellevue Community College in 2002 and a Bachelor of Arts in Elementary Education, with a minor in Spanish Education, and a teaching certificate from Central Washington University in the Spring of 2003. Robert Scott received a Bachelor of Science degree, specializing in Microbiology, from Central Washington University in June 2000. Robert Scott pursued a PhD at the University of Idaho in 2001, but did not graduate because of health problems that affected his concentration and learning ability. Subsequently, Robert began a masters program at Central Washington University from September 2002 to June 2005, but likewise did not graduate.

The loans at issue in this case were issued by USDOE, Educap, and TERI. Specifically, Sarah and Robert Scott are obligated to USDOE on six Federal Direct Consolidation Loans disbursed

---

[1] Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et. seq.*

MEMORANDUM DECISION - 2

September 29, 1998 through April 5, 2005. [Ex. A-8 through A-13].
The original amount disbursed was $84,755. [Ex. P-24 and P-26].
Plaintiffs owe $109,330.19 as of August 25, 2009. Plaintiffs are
obligated to Educap on two loans disbursed July 2, 2004 and
September 21, 2004. The original amount disbursed was $23,140.72.
[Ex. P-20]. Plaintiffs owe $34,028.94 as of August 18, 2009.
Finally, Plaintiffs are obligated to TERI on six loans disbursed
January 23, 2002 through January 25, 2005. The original loan
amount disbursed was $111,433.06. [Ex. P-21]. Plaintiffs owe
$179,084.68 as of August 5, 2009 on the loans held by TERI.
Collectively, the loans total $322,443.51, with monthly payments of
$1,846.28.[2] All of the foregoing educational loans are hereinafter
referred to collectively as the "Loans."

    B. <u>Income</u>. In 2008, Plaintiffs' joint adjusted gross income
was $90,116.24. Presently, Sarah Scott is an operations manager at
the Seattle Police Officers Guild and Robert Scott works at the
University of Washington as a molecular biologist conducting
research on fish viruses. Both Robert and Sarah have a consistent
work history since 1999, with only a few instances of unemployment,
which were beyond their control. The Court finds that Plaintiffs'
current monthly net income is $5,826.72. This amount is calculated
by taking their net income for the last two week pay period,
including deductions for medical and dental, multiplying the amount
by 26 (for the number of pay periods in a year), and dividing the
total by 12. [Ex. P-24].

---

[2] The foregoing information concerning the current loan payment and amounts due are taken from the Admitted Facts section of the Pre-Trial Order, pages 2 through 5.

MEMORANDUM DECISION - 3

After graduating with a teaching degree from Central Washington University in the Spring of 2003, Sarah Scott worked as a substitute teacher during the 2003-2004 school year in the Ellensburg School District. She continued to substitute teach in the Cle Elum-Roslyn School District during the second half of the 2005 school year. After failing to obtain a permanent position in education, Sarah began work in the front office at Dermatology Associates in July 2005. During the last part of 2005 and the beginning of 2006, Sarah Scott moved to Auburn, Washington to care for her dying father. During this time, Sarah worked at Knowledge Points as a tutor a few hours per week. In March 2006, Sarah began work as an administrative assistant with her current employer, Seattle Police Officers Guild.

Robert Scott also has a consistent work history, apart from the time he spent pursuing his higher education and short periods of transition. From 1999 to 2001, Robert worked at Onsite Engineering & Management in the warehouse, Nu-West Group as a lab-temp, and Bartels Immunodiagnostics Inc. as an associate scientist I. In 2002, when Robert Scott returned to school at Central Washington University to pursue his Masters degree in Microbiology, he worked as a teaching and research assistant in the science department. In 2005, Robert's mentor and advisor left the university, precluding Robert from finishing his program. Robert worked in a few short-term positions during the summer of 2005 until he began as a sales representative at Stereotomy Inc. for one year beginning in September 2005. Robert was in transition during the fall of 2006 until he retained his position at Ondine Research Laboratories Inc. in December of 2006. He was laid off

MEMORANDUM DECISION - 4

from Ondine Research Laboratories Inc. on October 31, 2009 for company financial reasons beyond his control. Robert began his current position at the University of Washington as a molecular biologist on December 4, 2008.

Robert and Sarah Scott testified at trial that they do not have opportunities to increase their income in the future. Sarah testified that she has been promoted to the highest level possible at her current job, unless she becomes a police officer. She stated that no other promotions or raises are available other than annual cost of living increases. Sarah works overtime, but does not receive compensation for that extra work. Robert Scott testified that he feels lucky to have his job at University of Washington in the biotech industry, which is struggling in the current economy. He testified that his current income is comparable to other similar positions in his field. Robert is paid with funds from a three year grant from the National Science Foundation and, due to the economy, his cost of living increases are on hold. Robert stated that his job contract will expire in approximately two and a half years, at which time, he will either have to retain a new position, or may continue at the University of Washington if more funding is secured. No evidence was presented that Robert or Sarah Scott can expect an increase in income during the Loan repayment periods that will significantly improve their financial condition.

C.  <u>Expenses</u>. Plaintiffs filed an amended Schedule J on July 21, 2009 to accurately depict their current expenditures, set forth in Ex. P-24. Plaintiffs' monthly expenses are listed at

MEMORANDUM DECISION - 5

$6,831.90; thus, expenses exceed their monthly income of $5,826.72 by approximately $1,005.18.

Schedule J reflects that Plaintiffs rent a four bedroom home owned by Sarah Scott's mother, Catherine Scott. Plaintiffs pay $1,055 per month in rent to Catherine Scott. Sarah testified that the rent amount is based upon what Catherine Scott pays to rent her own apartment and rent will increase with Catherine Scott's apartment rental increases. Plaintiffs pay $1,461.47 in monthly day care expenses. Sarah Scott testified that they get a two child discount and have shopped for less expensive day care facilities, but have not found anything less expensive. When Plaintiffs' older son begins first grade, Plaintiff' day care expenses will decrease by $161 per month. Plaintiffs plan to pay day care expenses for at least the next seven years, however, until their oldest son reaches age twelve.

Plaintiffs have significant automobile expenses. They bought a used 2006 Subaru Tribecca post-petition in May 2008. The monthly payment for the Subaru is just under $500 with an annual interest rate of 15-18%. In addition, Plaintiffs report $779 in monthly expenses for gas and vehicle maintenance and $257 in monthly automobile insurance expense. Sarah Scott uses the Subaru to drive to and from work as well as to run errands and take the children to day care. Sarah testified that using public transportation would require her to make multiple transfers to get to her south downtown Seattle job and would make it difficult to get to her children's day care in an emergency. Plaintiffs borrow their second car from Robert's mother, Deanna Scott, at no expense and that car is used primarily by Robert Scott to travel to work.

MEMORANDUM DECISION - 6

Plaintiffs' monthly food budget for their family of four is $900. Sarah testified that the food budget has risen since her younger son stopped breast feeding. She also testified that they do not go out to dinner and the food budget is for healthy, nutritious food. Plaintiffs' budget includes $40 per month for internet service and $70 per month for two cell phones. Sarah Scott testified that both she and her husband use the internet for work purposes such as checking email at night, and that she needs her cell phone in case of an emergency at work. Sarah and Robert also use their cell phones to communicate with each other during the day to coordinate who will pick up the children.

Plaintiffs pay $49 per month for satellite television. Sarah Scott testified that television is the family's sole form of entertainment and that they have no extra money for vacations, movies and other forms of entertainment. Plaintiffs' entertainment budget is $17 per month. Plaintiffs pay $161 per month in pet expenses for two cats and one dog. Sarah Scott testified that the golden retriever has a thyroid condition which requires medication and special food. She testified that their son's doctor recommended retaining the dog to aid in the treatment of their son's psychological problems. Plaintiffs pay $100 per month to their attorney for fees related to the litigation in this case. They also have $20,000 in non-student loan debt and an unpaid medical bill of approximately $900.

D. <u>Loan Repayment</u>. Both of Plaintiffs' USDOE loans are currently under the William D. Ford program (Direct Loans). [Ex. P-22]. As of August 25, 2009, the combined amount due on the USDOE loans was $109,330.19, with 2.48% interest rate (changed July 1,

MEMORANDUM DECISION - 7

2009). A payment of $241.38 was made on February 15, 2001 for Robert Scott's loan and a payment of $370.26 was made on February 28, 2005 for Sarah Scott's loan. Plaintiffs were granted multiple deferments and forbearances on each loan. Loan deferments and forbearances for Robert Scott's loans were in effect nearly continuously from February 7, 2001 through August 7, 2008. Deferments and forbearances on Sarah Scott's loans were in effect from December 21, 2003 through December 22, 2004, then nearly continuously from March 25, 2005 through the present date. [Ex. P-22].

Plaintiffs' Educap loans are not eligible for consolidation into the William D. Ford program and no further extensions, deferments, or forbearances are available. As of August 18, 2009, Plaintiffs owe $34,028.94 for both Educap loans, with varying interest rates starting at 8.15% on $12,572.93 and 10.15% on $21,456.01. Seventy two payments have been made on both loans since August 2004, totaling $19,833.62. Deanna Scott was a co-signer on both Educap loans, but was discharged of her debts by an agreed order after she made a $4,000 payment on August 19, 2009. The current monthly payment for the two Educap loans is $281.

Plaintiffs' TERI loans are also not eligible for consolidation into the William D. Ford program. As of August 5, 2009, Plaintiffs' owe $179,084.68 on six TERI loans. The loans have variable interest rates, 5.060% on $154,061.45 and 9.601% for the remaining $25,023.23. Thirty payments totaling $3,541.25 were made on the two loans on which Sarah Scott was the primary borrower. In April 2009, a $2,703.48 payment was made by co-obligor Deanna Scott. This payment is being held in a trust by TERI's attorneys.

MEMORANDUM DECISION - 8

Temporary hardship forbearances were in effect during the following dates: (1) December 14, 2003 through June 14, 2004; (2) July 27, 2004 through January 27, 2005; (3) January 1, 2006 through June 30, 2006; (4) August 1, 2006 through January 31, 2007; and (5) March 2, 2006 through June 1, 2006. The current monthly payment for the combined six loans is $968.78.

## II. JURISDICTION

This Court has jurisdiction of this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I) and this is a core proceeding.

## III. CONCLUSIONS OF LAW

A. The *Brunner* Requirements.

Section 523(a)(8) provides that student loans of the type at issue in this case are nondischargeable "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." The Ninth Circuit Court of Appeals has adopted the three-part test from *In re Brunner*, 46 B.R. 752 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987), to determine whether excepting a student loan from discharge constitutes an undue burden on a debtor. *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108 (9th Cir. 1998). Under *Brunner*, a student loan is dischargeable only if:

1. The debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for himself or his dependents if forced to repay the loans;

2. additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

3. the debtor has made good faith efforts to repay the loans.

MEMORANDUM DECISION - 9

Plaintiff has the burden of proving each of the above elements by a preponderance of the evidence.

Each defendant has the burden of proving by a preponderance of the evidence that (1) the debt is in fact an educational loan, (2) the loan was made, and (3) the loan was insured/guaranteed by a governmental unit or was made under a program funded in whole or in part by a governmental unit or non-profit institution. Plaintiffs have stipulated that the Loans meet these conditions.

B. <u>Plaintiff's Ability to Maintain a Minimal Standard of Living</u>.

Plaintiffs must prove that they cannot, based on their current income and expenses, maintain a "minimal" standard of living for themselves and their dependents if forced to repay the loans. The Court concludes that Plaintiffs have met this burden.

The first prong of the *Brunner* Test requires more than a showing of tight finances. *United States Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir. BAP 1999). In defining undue hardship, courts require more than temporary financial adversity but typically stop short of utter hopelessness. In *In re Nys*, 446 F.3d 938 (9th Cir. 2006), the 9th circuit endorsed the trial court's review of the following nonexclusive factors relevant to the *Brunner* elements:

> (1) Serious mental or physical disability of the debtor or a dependent of the debtor which prevents employment or advancement;
> (2) The debtor's obligations to care for dependents;
> (3) Lack of, or severely limited education;
> (4) Poor quality of education;
> (5) Lack of usable or marketable job skills;
> (6) Underemployment;
> (7) Maximized income potential in the chosen educational field, and no other more lucrative job skills;
> (8) Limited number of years remaining in the debtor's work life to allow payment of the loan;

MEMORANDUM DECISION - 10

(9) Age or other factors that prevent retraining or relocation as a means for payment of the loan;
(10) Lack of assets, whether or not exempt, which could be used to pay the loan;
(11) Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; and
(12) Lack of better financial options elsewhere.

Except for brief periods of unemployment out of their control, Plaintiffs have been consistently employed since the Loans first became due. Robert and Sarah Scott currently work full-time. Although Sarah Scott is not specifically using her degree in elementary education, she would not have been promoted to operations manager at the Seattle Police Officers Guild without a college degree and she testified that no further promotions are available. Sarah would not earn substantially more and would likely earn less if she were to use her elementary education degree as a school teacher. Robert Scott's degree in microbiology has enabled him to work in his current position with the University of Washington. Since Robert was unable to finish his post-graduate degrees for reasons beyond his control, he is unable to earn substantially more in his present field or at a different job. Therefore, there is no evidence to suggest that Plaintiffs can further maximize their income potential in their chosen educational fields nor do either possess more lucrative job skills. Although Robert Scott testified to having hernia operations and subsequent pain, no evidence suggests that this will prevent him from working in his field in the future. Plaintiffs testified that they possess no assets, such as retirement accounts or other savings accounts, from which they can contribute to the Loans.

MEMORANDUM DECISION - 11

As previously noted, Plaintiffs have two young dependent children. Since both Plaintiffs work full-time, day care expenses are necessary. Sarah Scott testified that their current daycare expense is the lowest monthly payment they could find. Further, as the children grow older, Plaintiffs' expenses will inevitably rise as their sons require more food, begin sports, and require increased educational expenses and school supplies.

Although Plaintiffs could reduce their expenses by selling their Subaru Tribecca ($494), cancelling satellite television ($49), cancelling internet service ($40), cancelling yard service ($20), and giving up their pets ($161), the anticipated savings will not be sufficient to cover their current monthly net loss of $1,005.18. In order to generate positive monthly net income from which some part of the Loans could be repaid, Plaintiffs' monthly expenses would have to be reduced to the point where they could not pay even basic living expenses.[3]

With the exception of the purchase of the Subaru Tribecca, Plaintiffs have made reasonable attempts to minimize expenses. They have consistently worked long hours and have few excesses in life. The defendants failed to articulate any scenario in which reductions to Plaintiffs' current expenses could result in positive net income from which the Loans can be paid.

---

[3] Plaintiffs monthly shortfall is eliminated only if they reduce transportation expenses to $500 per month, reduce their car payment to $200 per month and eliminate all pet expenses, miscellaneous personal expenses, yard expenses, and internet expenses. Even those drastic reductions will not produce positive net income.

MEMORANDUM DECISION - 12

C.  <u>Additional Circumstances</u>.

Plaintiffs must demonstrate their inability to pay in the present and a likely inability to pay in the future. *In re Nys*, *supra*. They need not demonstrate exceptional circumstances beyond that. *Id.* Specifically, Plaintiffs must demonstrate that their inability to pay will likely persist throughout a substantial portion of the loan repayment period. *Id.* at 947. The Court finds that Plaintiffs have met this burden. There is no suggestion, as in *Nys*, that Plaintiffs have purposefully adopted a lifestyle that prevents them from repaying their student loans.

In this instance, aside from a possible poor decision to purchase the Subaru Tribecca, Plaintiffs live frugally and have made reasonable choices about their income and expenses. Plaintiffs have taken only one family vacation during which they stayed in their mother-in-law's hotel room. Plaintiffs do not go out to dinner or to the movies and have a very limited entertainment budget.

The Court finds that Plaintiffs cannot expect significant increases in their future income sufficient to cover their monthly shortfall and increasing expenses that will naturally occur with the growth of their children. Given their education and job opportunities, Plaintiffs have maximized their income potential with their current jobs and cannot expect an increase in income during the course of the repayment period. [*See* I. FACTS, B. Income, ¶4]. Accordingly, despite the fact that Plaintiffs are relatively young, the Court finds that they will not have sufficient income to pay the Loans through a substantial portion of the repayment period.

D.  <u>Good Faith</u>.

Plaintiffs must prove that they have made good faith efforts to repay the Loans. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *In re Birrane*, 287 B.R. 490 (9th Cir. BAP 2002). *Birrane* states that good faith is also measured by the debtor's efforts to negotiate a repayment plan. In *Birrane*, the debtor made payments on her loan for some period of time and had made efforts to negotiate repayment, even though those efforts were denied. Then the debtor was informed at trial of an ICRP option for repayment. The Court found she lacked good faith in not having discussions with the lender about that option. *Birrane* found that the debtor's failure to maximize her income and her failure to take steps to renegotiate payment were indications of a lack of good faith such that discharge of her student loan should be denied.

As stated above, Plaintiffs have maximized their income potential given their employment prospects. Further, Plaintiffs have made efforts to repay their loans and negotiate repayment plans. Plaintiffs consistently requested deferments and forbearances when appropriate. They have made two payments on the USDOE loans and have been granted deferments and forbearances for a majority of the loan repayment period. The USDOE has set forth repayment plan options in Exhibit A-13. A significant portion of the Educap loans have been repaid ($19,833.62). Finally, Plaintiffs have made thirty payments totaling $3,541.25 on two of the TERI loans, and have been granted temporary hardship forbearances for a significant portion of the repayment period. Plaintiffs have been informed that no further forbearances,

MEMORANDUM DECISION - 14

deferments, or consolidation options are available on the Educap and TERI loans. The Court finds, based upon the foregoing facts, that Plaintiffs' efforts to make payments on the Loans and to negotiate more favorable repayment terms satisfy the good faith requirement.

On the basis of the foregoing, after application of the *Brunner* factors, the Court concludes that requiring Plaintiffs to pay any portion of the Loans will impose an undue hardship on them and their dependents.

## CONCLUSION

Having met their burden of proving the *Brunner* factors, the Court finds that Plaintiffs are entitled to discharge of the Loans. The Court will enter an order to that effect upon presentation by Plaintiffs.

///END OF MEMORANDUM///

*Karen A. Overstreet*
United States Bankruptcy Judge
(Dated as of Entered on Docket date above)

MEMORANDUM DECISION - 15